*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 20b0001n.06

# BANKRUPTCY APPELLATE PANEL

OF THE SIXTH CIRCUIT

---

IN RE: DAN MAZZOLA, INC.,

        *Debtor.*

_____

ROCKNE'S, INC.,

        *Appellant,*

        *v.*

DAN MAZZOLA, INC.,

        *Appellee.*

No. 19-8007

---

On Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Akron.
No. 5:18-bk-52271—Alan M. Koschik, Judge.

Argued: November 13, 2019

Decided and Filed: January 28, 2020

Before: BUCHANAN, HARRISON, and OPPERMAN, Bankruptcy Appellate Panel Judges.

---

**COUNSEL**

**ARGUED:** Ray L. Weber, RENNER, KENNER, GREIVE, BOBAK, TAYLOR & WEBER CO., L.P.A., Akron, Ohio, for Appellant. Peter G. Tsarnas, DAY KETTERER, LTD., Akron, Ohio, for Appellee. **ON BRIEF:** Ray L. Weber, Laura J. Gentilcore, RENNER, KENNER, GREIVE, BOBAK, TAYLOR & WEBER CO., L.P.A., Akron, Ohio, Michael J. Moran, GIBSON & MORAN, Cuyahoga Falls, Ohio, for Appellant. Peter G. Tsarnas, DAY KETTERER, LTD., Akron, Ohio, for Appellee.

## OPINION

MARIAN F. HARRISON, Bankruptcy Appellate Panel Judge. Dan Mazzola, Inc. ("the Debtor") operates a family restaurant pursuant to a franchise agreement with Rockne's Inc. ("Rockne's"). Rockne's asserts that it terminated the Debtor's franchise agreement prior to the Debtor's bankruptcy filing and asserts that a chapter 11 plan is not feasible because the Debtor cannot use its trade name and trade dress to operate a restaurant. The bankruptcy court ruled that the franchise agreement had not been terminated prepetition and denied Rockne's motion to convert or dismiss, or in the alternative for relief from the automatic stay. For the reasons that follow, the Panel affirms.

### ISSUE ON APPEAL

The sole issue on appeal is whether the bankruptcy court erred when it denied Rockne's motion to convert or dismiss the bankruptcy case, or in the alternative, grant relief from the stay. The answer to that question turns on whether the franchise agreement was terminated prepetition.

### JURISDICTION AND STANDARD OF REVIEW

On May 20, 2019, the Panel entered an order holding that the bankruptcy court's order denying the motion to convert or dismiss the case is a final order because it locks into place certain pieces of the bankruptcy puzzle. (B.A.P. Order, ECF No. 11, May 20, 2019.) The bankruptcy court's order is both procedurally complete and is determinative of substantive rights because the order determined that the franchise agreement had not been terminated prepetition.

A bankruptcy court's determination as to whether to convert or dismiss a case is reviewed for an abuse of discretion. *Mitan v. Duval* (*In re Mitan*), 573 F.3d 237, 247 (6th Cir. 2009); *In re Creekside Senior Apartments, L.P.*, 489 B.R. 51, 62 (B.A.P. 6th Cir. 2013).

> "An abuse of discretion occurs only when the [bankruptcy] court 'relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard.'" *In re Bever*, 300 B.R. 262, 264 (6th Cir. BAP 2003) (quoting *Corzin v. Fordu* (*In re Fordu*), 209 B.R. 854, 857–58 (6th Cir. BAP

1997)). "We will find an abuse of discretion only upon a definite and firm conviction that the [bankruptcy] court committed a clear error of judgment." *In re Kisseberth*, 273 F.3d 714, 721 (6th Cir. 2001). The question is not "not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision." *In re M.J. Waterman & Assocs.*, 227 F.3d 604, 608 (6th Cir. 2000).

*In re Henry*, 534 B.R. 721, 722 (B.A.P. 6th Cir. 2015). "The particular factual findings of the bankruptcy court are reviewed for 'clear error.'" *In re Jackson*, 554 B.R. 156, 159 (B.A.P. 6th Cir. 2016), *aff'd*, No. 16-4021, 2017 WL 8160941 (6th Cir. Oct. 18, 2017) (citing *Behlke v. Eisen* (*In re Behlke*), 358 F.3d 429, 433 (6th Cir. 2004) (citations omitted)).

In this appeal, the factual finding that the bankruptcy court reached is that the franchise agreement had not been terminated prepetition. This finding required the bankruptcy court to interpret the contract. Questions of contract interpretation are reviewed *de novo*. *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 259 (6th Cir. 2012); *Kraus Anderson Capital, Inc. v. Bradley* (*In re Bradley*), 507 B.R. 192, 196 (B.A.P. 6th Cir. 2014).

## FACTS

Rockne's is an Ohio corporation that owns and operates seven restaurants in northeast Ohio. Additionally, Rockne's has franchise agreements with two other parties, including the Debtor. The Shannon family own all the shares of Rockne's. Mark Shannon is the current President.

The Debtor operates a Rockne's franchise ("the Stow Restaurant") located at 4240 Hudson Drive, Stow, Ohio. The Debtor and Rockne's entered into their original franchise agreement in 2007 for a ten-year term. In February 2017, the parties executed a new franchise agreement effective January 1, 2017 ("the Franchise Agreement"). Dan Mazzola, the principal of the Debtor, had operated an additional Rockne's franchised restaurant which failed prior to February 2017. That restaurant was not owned or operated by the Debtor, however, that failure gave rise to certain outstanding debts owed by Mr. Mazzola to Rockne's pursuant to a guaranty.

In March or April of 2018, there was an outbreak of E. coli bacteria in the United States linked to romaine lettuce. On April 20, 2018, Rockne's sent a memorandum to all its locations,

including the Stow Restaurant, informing them that the romaine lettuce purchased from their authorized supplier was safe because it was sourced from Mexico, while the recall on romaine lettuce was for produce from Yuma, Arizona. But then, on April 26, 2018, Rockne's sent a memorandum to all its locations, including the Stow Restaurant, ordering them to cease serving romaine lettuce and directing them to dispose of any romaine lettuce currently in stock. On May 3, 2018, Rockne's sent another communication to all its restaurants, again stating that romaine lettuce was not to be served. A third notice was sent on May 10, 2018. On May 21, 2018, Rockne's sent a certified letter to the Debtor ordering it to immediately cease serving romaine lettuce. The parties stipulated that between April 23, 2018, and May 21, 2018, the Debtor served to the public more than 150 salads containing romaine lettuce at the Stow Restaurant. The parties also stipulated that multiple other Rockne's restaurants ordered romaine lettuce and served salads containing romaine lettuce during that timeframe.

On July 2, 2018, Rockne's sent a certified letter to the Debtor purporting to terminate the Franchise Agreement. Rockne's called the serving of romaine lettuce "a serious violation of The [Franchise] Agreement." (Notice of Termination of Franchise Agreement at 1, Ex. H.)[1] The notice further stated that the violation "placed public health in jeopardy" and "threatened the existence of the entire Rockne's franchise system." (*Id.*) In addition to the alleged violation caused by serving romaine lettuce, Rockne's cited additional reasons for termination of the Franchise Agreement, including: an allegation that the Debtor was insolvent, an allegation that the Stow Restaurant used its kitchen to prepare food for another restaurant, and an allegation that the Stow Restaurant manager was employed at another restaurant in violation of the Franchise Agreement. (*Id.* at 2.) The notice offered to forgive $160,000 in debt owed by the Debtor, as well as pay an additional sum of $100,000 for furniture, fixtures, and equipment, and to employ Dan Mazzola as a General Manager at the Stow Restaurant under an at-will employment agreement. The letter gave the Debtor 15 days to respond. (*Id.* at 3.)

---

[1]All lettered Exhibits herein refer to the exhibits attached to the Amended Stipulations of the Movant, Rockne's, Inc. and the Debtor and Debtor-in-Possession, Dan Mazzola, Inc. (Case No. 18-52271 ECF No. 63-2 (Jan. 23, 2019).)

The Debtor responded to the notice of termination on July 17, 2018. The Debtor called the allegations in the notice of termination "categorically false." Regarding serving romaine lettuce, the Debtor stated "No product ever received by [the Debtor] or served to the public contained infected product nor was there ever a reported sickness, threat or otherwise from [the Stow Restaurant]. In short, there was no threat of danger to the public." (July 17, 2018 Letter to Rockne's, Ex. I.) The Debtor also stated that it was "solvent as defined both under the United States Bankruptcy Code and the Ohio Revised Code." (*Id.* at 2.) The Debtor also refuted the allegations that the Stow Restaurant kitchen was being used to prepare food for another restaurant and that any of its management had failed to devote his or her full time and best efforts to the management of the restaurant. Further, the Debtor asserted that the letter was simply an attempt to take control of the last independent franchise of Rockne's without making a reasonable buy-out offer. (*Id.*)

The Debtor continued to operate the Stow Restaurant following the receipt of the notice of termination. On September 18, 2018, Rockne's filed suit in the Northern District of Ohio seeking to enjoin the Debtor from further use of the Rockne's trademark and trade dress. *Rockne's, Inc. v. Dan Mazzola, Inc.*, Case No. 5:18-cv-02145 ("District Court Case"). The Debtor filed a chapter 11 bankruptcy petition on September 21, 2018, which stayed the District Court Case.

On October 9, 2018, Rockne's filed a motion to dismiss or convert the Debtor's bankruptcy case, or in the alternative, asked for relief from the automatic stay to pursue the District Court Case ("Motion to Dismiss"). In its Motion to Dismiss, Rockne's asserted that because the Franchise Agreement had been terminated prepetition, the Debtor had no possibility of a successful reorganization. The Debtor objected to the motion, arguing that Rockne's did not have grounds to terminate the Franchise Agreement and that reorganization was possible. The bankruptcy court held an evidentiary hearing on the motion on January 28 and 29, 2019. At the hearing, the parties agreed that the determination of whether the Franchise Agreement had been terminated was dispositive of the Motion to Dismiss and consented to the bankruptcy court entering a final order.

Following stipulations by the parties, testimony from the principals of the Debtor and Rockne's, and others, and consideration of numerous exhibits, the bankruptcy court held "that the Franchise Agreement remained in force as of the petition date, is an executory contract of the debtor-in-possession's estate, and is protected against unilateral termination pursuant to 11 U.S.C. § 362(a) absent relief from stay." (Mem. Decision at 33, Bankr. No. 18-52271, ECF No. 69, March 27, 2019.) Accordingly, the bankruptcy court denied the Motion to Dismiss. Rockne's timely filed this appeal.

## DISCUSSION

Both Rockne's and the Debtor spent considerable time in their briefs and at oral argument arguing, quite passionately, their version of the facts, or more accurately, the facts they deem important. Ultimately, though, there is little disagreement about the facts. The parties only take issue with the bankruptcy court's factual finding that the sale of romaine lettuce during the E. coli outbreak constituted a threat or danger to public health or safety, and the finding that Rockne's had not successfully terminated the Franchise Agreement based upon that alleged threat.

The Panel is not a finder of fact. In reaching our decision, the Panel applies the facts which were stipulated to by the parties at trial. The Panel has reviewed the bankruptcy court's findings for clear error and finds none. Thus, utilizing these facts, the Panel agrees that Rockne's did not successfully terminate the Franchise Agreement prior to the filing of the bankruptcy petition.

In reaching this result, the Panel begins by examining the Franchise Agreement. Article XIV.A, paragraph 3 of the Franchise Agreement provides:

> Franchisee shall be deemed to be in default and Franchisor may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon notice (Section XXI) by Franchisor to Franchisee, upon the occurrence of any of the following events:
>
>     . . . .

> 3. If a threat or danger to public health or safety results from the construction, maintenance or operation of the Franchised Business[.]

(Franchise Agreement at 21-22, Exhibit A.)

The parties spent some time arguing whether the Debtor's action of selling romaine lettuce after Rockne's had directed its franchisees not to sell romaine constituted a danger or threat to the public such that Article XIV.A.3 could be invoked. The Debtor argues that using romaine from a safe source did not create a threat or danger to public health and safety. Rockne's asserts that all romaine lettuce posed a threat during that time, which is why it instructed all its stores to stop selling romaine lettuce.

The bankruptcy court held "the Court does not conclude that romaine lettuce did not constitute a *threat* to public safety from April 26 to June 19, 2018. It did. A risk does not need to have a certain outcome to be a *threat*." (Mem. Decision at 28 n.4.) The Panel finds that the bankruptcy court's conclusion is not clearly erroneous. The Franchise Agreement allows Rockne's to be the determiner of product suppliers.**2** The Debtor presented no evidence to the bankruptcy court that it had the right to substitute its own judgment for Rockne's in this regard.

Rockne's argues that based on its finding that the sale of romaine lettuce constituted a threat, the bankruptcy court should have ruled that the Franchise Agreement had been terminated immediately upon receipt of the prepetition Termination Letter. But the bankruptcy court found that the Termination Letter was not effective for immediate termination because Rockne's waited until the threat had passed before it tried to terminate the Debtor's Franchise Agreement.**3**

---

**2**The Debtor agreed to operate the Restaurant in conformity with the standards that the Franchisor prescribed, including "use only such food items, supplies and forms as conform with the Franchisor's standards and specifications as contained in the Manuals." (Franchise Agreement, Art. V.N.1, Ex. A at 9.) Likewise, in Article V.N.2, the Debtor agreed "[t]o sell or offer for sale only such food items and services as meet Franchisor's uniform standards of quality and quantity, . . . and to refrain from any deviation from Franchisor's products, methods, techniques, standards and specifications[.]" (Franchise Agreement, Art. V.N.2, Ex. A at 9.)

**3**The bankruptcy court also hinted that the termination was a pretext since "[o]ther Rockne's restaurants sold romaine lettuce during the temporary prohibition, including after receiving three of the four notices that the Debtor received, and faced no substantive disciplinary action." (Mem. Decision at 28.) The Panel's decision is based solely on its interpretation of Article XIV.A.3 without regard to Rockne's motivations in seeking termination.

In essence, the bankruptcy court held that XIV.A.3 is an "emergency" provision, which can only be utilized for immediate termination while a threat or danger is on-going. Rockne's argues the Franchise Agreement does not contain such a requirement. Because this question is a matter of contract interpretation, the Panel undertakes a *de novo* review.

Rockne's argues that the plain language of the provision does not include a timing requirement. This argument is not persuasive because the converse is also true. The plain language does not state that the Franchise Agreement can be terminated due to a past danger or threat. The contract is silent as to whether a threat must be current or on-going to utilize the provision.

When a contract is silent as to a particular matter, courts use salutary tools of construction to determine the parties' intent. "In determining the intent of the parties, the court must read the contract as a whole and give effect to every part of the contract, if possible." *Beasley v. Monoko, Inc.*, 958 N.E.2d 1003, 1011–12 (Ohio Ct. App. 2011) (citing *Clark v. Humes*, 10th Dist. No. 06AP–1202, 2008 WL 435003 (Ohio Ct. App. Feb. 19, 2008)). Additionally, "[p]arties to any contract are bound toward one another by standards of good faith and fair dealing." *McLemore v. McLemore*, No. 13802, 1994 WL 579866, at *2 (Ohio Ct. App. Oct. 19, 1994) (citing *Bolling v. Clevepak Corp.*, 484 N.E.2d 1367, 1376 (Ohio Ct. App. 1984)). Thus, "when a contract is susceptible to a fraudulent interpretation as well as an honest one, the latter should be presumed." *Ebie v. Teledyne Indus., Inc.*, 859 F.2d 152, 1988 WL 98366, at *4 (6th Cir. 1988) (Table). The Sixth Circuit has affirmed that "'the implied covenant of good faith is a construction aid that helps a court determine the intent of the parties; it cannot be used to add terms to the contract when there is no evidence that the parties intended that those terms be included.'" *Thomasville Furniture Indus., Inc. v. JGR, Inc.*, 3 F. App'x 467, 472 (6th Cir. 2001) (quoting *Metro Commc'ns Comp. v. Ameritech Mobile Commc'ns*, 984 F.2d 739, 743 (6th Cir.1993)).

Using these rules of contract interpretation, the Panel holds that in order to use Article XIV.A.3 to terminate the Franchise Agreement without notice and opportunity to cure, the threat or danger to the public health and safety must be ongoing. This reading allows Rockne's to immediately end a franchise relationship where a dangerous situation is present, while honoring

the contract provisions which require Rockne's to give notice and an opportunity to cure issues that are less egregious.

The Franchise Agreement allowed Rockne's as Franchisor to determine the "health, safety and hygiene standards and ratings applicable to the operation of the Restaurant and the management of the personnel as Franchisor may reasonably require." (Franchise Agreement, Art. V.K, Ex. A at 9.) The Debtor agreed to operate the Restaurant in conformity with the standards that the Franchisor prescribed, including to "use only such food items, supplies and forms as conform with Franchisor's standards and specifications as contained in the Manuals." (Franchise Agreement, Art. V.N.1, Ex. A at 9.) Likewise, the Debtor agreed "[t]o sell or offer for sale only such food items and services as meet Franchisor's uniform standards of quality and quantity, . . . and to refrain from any deviation from Franchisor's products, methods, techniques, standards and specifications[.]" (Franchise Agreement, Art. V.N.2, Ex. A at 9.) Thus, by selling romaine lettuce despite Rockne's directive not to do so, and from an unauthorized produce supplier, the Debtor violated the terms of the Franchise Agreement. The breach of these duties in Article V. is grounds for termination under Article XIV.B. However, under that section, Rockne's is required to give notice and an opportunity to cure. Violations of Article V are not grounds for immediate termination under the contract. Likewise, Article XIV.A.11, which also addresses quality control standards does not permit termination without written notice of an opportunity to cure within three days, unless the quality control issue results in a danger to public health and safety. These provisions demonstrate the parties' intention that mere quality control issues would not be a basis for an immediate termination. The parties intended that only a threat or danger to the public warranted immediate termination, and even then, it is within the Franchisor's discretion.

Given the other methods of termination provided in the contract which require notice and an opportunity to cure, the Panel holds that Article XIV.A.3 was intended to be a tool which Rockne's could use to immediately halt operations only when a dangerous situation was created by the operation of the Franchise. Nothing in Article XIV.A.3, or other sections of the Franchise Agreement, indicate that a past threat or danger can serve as grounds for immediate termination. Moreover, no benefit is served by reading Article XIV.A.3 as allowing termination for a no-

longer existing threat or danger. A past violation that has been remedied does not pose a threat or danger to the public. Allowing Rockne's to use the immediate termination clause in such an instance, like the case before the Panel, would allow Rockne's to sidestep the notice and opportunity to cure requirements in Article V of the Franchise Agreement. Such a reading would render the notice provisions superfluous.

Moreover, the Debtor does not receive a windfall from this interpretation. Repeated violations can still lead to termination of the Franchise Agreement. Article XIV.A.12 allows for the termination of the Franchise Agreement without a notice and opportunity to cure if the Franchisee receives two or more notices of default under Section XIV.B. in any one calendar year during the term of the agreement whether such defaults are cured after notice. Likewise, failure to cure a violation can lead to termination.

The Franchise Agreement imposes a reasonableness requirement on the Franchisor. (*See* Franchise Agreement, Art. V.K, Ex. A at 9. *See also* Tr. Jan. 29, 2019, at 117:1-3.) Requiring a threat or danger to public health and safety to be current or on-going in order to utilize Article XIV.A.3 to terminate the Franchise Agreement without an opportunity to cure is a reasonable reading of the contract which allows for termination to avoid an immediate problem without rendering other provisions requiring notice to be meaningless. The bankruptcy court did not err in determining that Rockne's could only invoke Article XIV.A.3 of the Franchise Agreement to terminate without notice while there was an on-going threat or danger to public health and safety. Once the threat or danger had passed, the Franchise Agreement required notice and an opportunity to cure before termination.

## CONCLUSION

The bankruptcy court's factual finding that the Franchise Agreement had not been successfully terminated prepetition is not clearly erroneous. The bankruptcy court did not err in denying Rockne's Motion to Dismiss. The bankruptcy court's order is hereby AFFIRMED.